

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00109-CR

MICHAEL EDWARD SAMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 55085-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

Michael Edward Sampson was convicted of evading arrest with a motor vehicle, a third-degree felony, and the trial court sentenced him to eight years' imprisonment and fined him $5,000.00. *See* TEX. PENAL CODE ANN. § 38.04 (Supp.). Sampson argues that the evidence to support his conviction was insufficient because the State failed to prove he knew a police officer was attempting to arrest him, but he nevertheless refused to yield to a police show of authority. Because we find the evidence sufficient to support the jury's determination of guilt, we affirm.

## I.     Factual Background[1]

On June 23, 2023, officers were watching a residence "due to several complaints of possible narcotic activity" when Sampson exited the property and left on a motorcycle. Officer Courtney Shane Manion of the Longview Police Department was notified to be on the lookout for the motorcycle. Manion located the motorcycle parked at a nearby Motel 6 and noticed that the license plate was "chopped off" to make it appear as though it was meant for a motorcycle. When Manion ran the license plate through the system, it was not registered to the motorcycle, making it a "fictitious license plate." Manion parked his patrol unit in a parking lot across the street to monitor the entrance and exit of the motel. When he saw the motorcycle pull out of the motel parking lot onto the public roadway, Manion pulled out behind it and "tried to catch up to [the rider]."

According to Manion's testimony, Sampson, whom he recognized on the motorcycle, turned into the "Towne Lake Village" subdivision, and Manion pursued him, stating, "At that

---

[1]We note that Sampson proceeded pro se for the guilt/innocence trial, with counsel appointed to shadow him. He elected to have appointed counsel represent him fully during the punishment portion of trial.

point, I was lights and sirens. I was in a marked patrol car. It was a small Ford Explorer SUV, and he refused to stop for me, actually accelerated and took evasive maneuvers to try to lose me." Manion continued to follow Sampson, when eventually, after diverting down an alleyway, Sampson pulled into a driveway of a home where he was known to stay. Sampson "[j]ust dumped the bike and jumped off of it and ran, trying to get in the front door . . . . But the door was locked, and he couldn't get in." At that point, Manion pursued Sampson on foot, instructing him to stop, which Sampson ignored. The footage from Manion's body camera was admitted into evidence and played for the jury. The footage showed, and Manion testified, that, during the pursuit, Sampson was reaching into his waistband to pull something out. Manion then tased Sampson, causing him to fall to the ground, where Manion then handcuffed Sampson. After being handcuffed, Sampson told Manion that he "was going to stop" when he got to his house, but instead, he took off running, as shown in the footage.

## II.    Sufficiency of the Evidence

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence." *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979)). "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to

3

the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

To convict him of the charged offense, the State had to prove that Sampson, while using a vehicle, intentionally fled from a person he knew to be a peace officer attempting to lawfully arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04. "A defendant's knowledge that a police officer is trying to arrest or detain him or her is an essential element of the offense of evading arrest." *Duvall v. State*, 367 S.W.3d 509, 511 (Tex. App.—Texarkana 2012, pet. ref'd)

4

(citing *Rodriguez v. State*, 799 S.W.2d 301, 302 (Tex. Crim. App. 1990); *Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004), *pet. dism'd, improvidently granted*, 193 S.W.3d 903 (Tex. Crim. App. 2006) ("[T]he accused must know that the person from whom he flees is a peace officer attempting to arrest or detain him." (alteration in original))). Here, Sampson challenges whether there is sufficient evidence from which the jury could reasonably infer beyond a reasonable doubt that he knew the officer was trying to arrest or detain him.

"Proof that an officer in a vehicle is attempting to arrest or detain a person generally consists of the officer displaying authority by the use of overhead/emergency lights and siren." *Id.* at 513. "While use of lights and sirens is not the only method for a peace officer to assert the authority of law (pointing to a driver to pull the vehicle over and verbal commands are others)," here, the jury heard Manion's testimony that when he first pulled out to stop Sampson for the license plate violation, he initiated his overhead lights as he began to follow Sampson. *See id.* Shortly thereafter, as Sampson began his evasive maneuvers, Manion also activated his siren. In addition to the testimony, the jury viewed Manion's body-camera footage and dash-camera footage, which clearly showed that Manion had his lights and siren activated during the pursuit of Sampson. Furthermore, the jury heard Sampson state in Manion's body-camera footage that he intended to pull over, indicating that he was aware of Manion's attempt to stop him, yet Sampson did not stop his motorcycle and indeed attempted to flee on foot after "dump[ing]" his motorcycle.

Sampson argues that there was not enough time between when Manion activated his lights and siren to indicate that an officer was attempting to stop or detain him. He also asserts

that he was not going at a high rate of speed. However, in direct contrast with his argument that he was unaware that an officer was attempting to stop him, Sampson states that he did not immediately stop for the officer because he was concerned about his safety, as well as the towing restrictions in his neighborhood, and instead decided it would be safer to stop in his own driveway. That argument directly acknowledges that Sampson was aware of the officer's attempt to stop him. Furthermore, given Sampson's actions after he got off the motorcycle, namely attempting to flee on foot, the jury was free to disbelieve Sampson's theory that he intended to stop when it was safe to do so.

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Sampson, using a vehicle, intentionally fled from Manion, a person Sampson knew to be a peace officer lawfully attempting to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04. Accordingly, we hold that the evidence is factually sufficient to support the jury's verdict, and we overrule Sampson's sole issue on appeal.

### III. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    December 4, 2025
Date Decided:    December 12, 2025

Do Not Publish

6